UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| JACOB A. BLACK,<br><br>                    Plaintiff,<br><br>         vs.<br><br>HECTOR URCELAY, in his official capacity,<br><br>                    Defendant. | CIV. 20-5083-JLV<br><br><br>ORDER |

**INTRODUCTION**

Plaintiff Jacob Black, appearing *pro se*, filed a complaint alleging a violation of the Rehabilitation Act, 29 U.S.C. § 794.  (Docket 1).  Defendant Hector Urcelay[1] timely filed an answer.  (Docket 29).   Mr. Black filed a motion for summary judgment together with one exhibit and an affidavit.  (Dockets 69, 69-1 & 70).  Mr. Urcelay filed a motion for summary judgment together with a legal memorandum, a statement of undisputed material facts, six declarations, a supplement and 20 exhibits.  (Docket 81, 82, 83, 83-1, 84, 84-1, 85, 85-1, 86, 87, 87-1 through 87-17, 88, 89, & 90).  Mr. Black filed a response to the defendant's motion for summary judgment.  (Docket 93).  Mr.

---

[1]Mr. Urcelay is a Supplemental Security Income Claims Specialist with the Social Security Administration in its Rapid City, South Dakota, field office. (Docket 83 ¶ 12).

Urcelay filed a reply brief in support of his motion for summary judgment together with a supplemental statement of material facts, a declaration and two exhibits.  (Dockets 97, 98, 99, 99-1 & 91-2).  Mr. Black filed a supplemental statement of material facts and reply brief in support of his motion for summary judgment together with four exhibits.  (Docket 102 & 102-1).

For the reasons stated in this order, plaintiff's motion for summary judgment is denied and defendant's motion for summary judgment is granted.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56(a), a movant is entitled to summary judgment if the movant can "show that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Once the moving party meets its burden, the nonmoving party may not rest on the allegations or denials in the pleadings, but rather must produce affirmative evidence setting forth specific facts showing that a genuine issue of material fact exists.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  See also Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007) (mere allegations, unsupported by specific facts or evidence beyond a nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment); Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) ("The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial.  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving

party, there is no genuine issue for trial.") (internal quotation marks and citation omitted).

Only disputes over facts that might affect the outcome of the case under the governing substantive law will properly preclude summary judgment. Id. at p. 248. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis in original).

If a dispute about a material fact is genuine, that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, then summary judgment is not appropriate. Id. However, the moving party is entitled to judgment as a matter of law if the nonmoving party failed to "make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In such a case, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. at p. 323.

In determining whether summary judgment should issue, the facts and inferences from those facts must be viewed in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). The key inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-

sided that one party must prevail as a matter of law." Anderson, 477 U.S. at pp. 251-52.

## PRELIMINARY MATTERS

Mr. Black is appearing *pro se*.  While pro se pleadings are to be construed liberally, *pro se* litigants are still expected to comply with procedural and substantive law.  Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).  "While a court generally affords pro se filings a liberal construction, a litigant's pro se status does not excuse [him] from reading the Federal Rules of Civil Procedure."  Reints v. City of Rapid City, No. CIV. 13-0543, 2014 WL 4782934, at *2 (D.S.D. Sept. 24, 2014) (quoting Jiricko v. Moser fis Marsalek. P.C., 184 F.R.D. 611, 615 (E.D. Mo. 1999), affd, 187 F.3d 641 (8th Cir. 1999)); see McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel.").

Like the Federal Rules of Civil Procedure, a *pro se* litigant must be familiar with the Local Rules of Practice of the District of South Dakota.  These rules are available online.  See https://www.sdd.uscourts.gov/content/local-rules-civil.  The local rule addressing motions for summary judgment requires:

> All motions for summary judgment must be accompanied by a separate, short, and concise statement of the material facts as to which the moving party contends there is no genuine issue to be tried.  Each material fact must be presented in a separate numbered statement with an appropriate citation to the record in the case.

D.S.D. Civ. LR 56.1(A).

Mr. Black was advised of these principals and obligations as a *pro se* litigant when the court struck his first motion for summary judgment.  See Docket 40 at p. 3 ("No good cause appearing for Mr. Black's failure to comply with [Fed. R. Civ. P.] 56 and the local rules, both documents must be stricken from the record in CM/ECF."

## ANALYSIS

### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Mr. Black's motion for summary judgment under the Rehabilitation Act asserts he is a "qualified individual with a . . . hearing impairment [and has] been a qualified individual for 15 years or more, with heart problems."  (Docket 69 at p. 2) (emphasis omitted).  In addition to a hearing impairment, Mr. Black asserts he has "a learning disability."  Id.   As a result of these disabilities, Mr. Black argues he was denied Social Security Administration benefits through administrative actions summarized as follows:

> No SSA 789 form;
>
> No proof of certified mail receipt on all appointments with SSA;
>
> No receipts on all scheduled meeting appointments—only one showing August 14 by Ms. Fischer; and
>
> Conflicting dates for hearings scheduled.

Id. at pp. 2-4.  Mr. Black's supporting documentation appears to be three pages of his Social Security Administrative record.  See Docket 69-1.

Page one captioned "Case Development Sheet" contains a listing of activities all appearing to have occurred on March 14, 2018.  Id. at p. 1.  On this page Mr. Black appears to have written the following:

> Mrs. Adams;
> Teachers had microphones; and
> Why are all the dates 3/14.

Id.

Page two of Mr. Black's submission also captioned "Case Development Sheet," contains a listing of activities occurring between April 9, 2018, and April 11, 2018.  Id. at p. 2.  On April 9 appears the following entry after Mr. Black's name and address apparently made by "BFS."

> more information needed regarding if you still would like to have a meeting with a disability hearing officer regarding your disability. I'm going to schedule a disability hearing and you should get the letter shortly with the date and time.  If you do not want to meet with a disability hearing officer please call me and I will cancel the hearing and then make a decision with all your medical records on file.

Id.  Mr. Black appears to have written on this exhibit the following:

> False statement disputable fact
> Where is form SSA789
> Date?

Id.

Page three of plaintiff's exhibits appears to be an overlay of three different pages of Social Security Administration ("SSA") documentation.  Id. at p. 3.  The top portion of the exhibit is a notice of hearing from the SSA directed to Mr. Black scheduling a hearing for November 8, 2018, at 3 p.m. Mountain Time.  Id.   The top of the page has a "Refer to" and the next line is redacted. Id.  Mr. Black apparently wrote "Refered [sic] to who?"  Id.  The middle section focuses on item 6, which states:  "Fisher, Cyndi, ASL.  Ms. Fisher has knowledge regarding Plaintiff's failure to appear at a scheduled meeting on August 14, 2018, at the SSA Rapid City Field Officer."  Id.   On the top of this

6

portion of the exhibit, Mr. Black apparently wrote "other parts of records show different hearing dates." Id.

The bottom portion contains entries 3 through 9, with part of 10 also included. Id. Mr. Black highlighted item 7 by boxing in the date of April 16, 2018, relating to a "Request for Hearing by Administrative Law Judge" and a reference to "United States #000029." Id. Mr. Black also highlighted item 8 which referenced a "Handwritten note by Jacob Black dated April 16, 2018. United States #0000030." Id. Mr. Black circled the number. Id.

Accompanying Mr. Black's submission was a document he captioned "Affidavit in support of Plaintiff's Motion for Summary Judgement." (Docket 70 at p. 1). The totality of the affidavit declares: "I Jacob Black the movant declares [sic] all is true to the best of my knowledge for motion for summary judgment." Id.

Filed the same day as Mr. Black's motion for summary judgment were a motion for judicial notice and a motion for declared emergency. (Dockets 71 & 72). The judicial notice motion, in Mr. Black's handwriting stated:

> Notice to this court: This court is a judicial, & not an administrative proceeding & is governed by equity jurisprudence. Is commonly known that a hearing impairment is considered a disability under the Americans with disabilities Act & Rehabilitations Act. See Muller vs. Oregon – Brandeis brief.

(Docket 71). The motion for declared emergency, in Mr. Black's handwriting without editing, stated:

> I Jacob Black the Plaintiff seeks a motion for declared emergency for getting assistance with my hearing aids and for the court to act immediately on my MSJ. The judge is aware of my right aid falling in Kool-Aid, & it having problems. My left aid is now broken and I

7

cant afford to get it fixed.   Prayer for relief on declared emergency.
Soon I'll have no hearing aids.

(Docket 72).

<u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Defendant's brief acknowledges the "Rehabilitation Act prohibits discrimination based on disability in programs receiving federal assistance." (Docket 82 at p. 7) (referencing 29 U.S.C. 794(a)).   Defendant's motion begins by "assum[ing] that Mr. Black is an individual with a disability under the Rehabilitation Act." <u>Id.</u> at p. 8.   Defendant also "concedes that the SSA receives federal funding."   <u>Id.</u>   Defendant submits "SSA furnished several aids to facilitate effective communication with Mr. Black and there is no evidence that Mr. Black was unable to effectively communicate with SSA employees." <u>Id.</u> at p. 10.   Defendant argues "[t]here also is no evidence . . . that SSA ignored or refused a specific request from Mr. Black for a sign language interpreter, and Mr. Black has not identified any harm he suffered as a result of the agency's alleged failure to provide an interpreter (which the agency categorically denies)." <u>Id.</u> at pp. 10-11.   "On these facts," defendant submits "the SSA properly discharged its duty to provide effective communication to Mr. Black." <u>Id.</u> at p. 11.   Additionally, defendant contends "Mr. Black was provided with an 'equal opportunity' to access the SSA programs and services and to 'gain the same benefit' as his hearing-abled peers, he simply chose not to do so." <u>Id.</u> at pp. 12-13 (citing  <u>Argenyi v. Creighton University</u>, 703 F.3d 441, 449 (8th Cir. 2013)).

8

UNDISPUTED MATERIAL FACTS

Mr. Ureclay's statement of material facts asserts it "is made in support of the Defendant's motion for summary judgment and in opposition to Mr. Black's motion for summary judgment." (Docket 83 at p. 1) (italics omitted). Defendant contends Mr. Black "failed to present a statement of material facts" in support of plaintiff's motion for summary judgment as required by D.S.D. Civ. LR 56.1(A). Id.

Defendant's statement of undisputed material facts provides the following. With profound hearing loss in both ears, Mr. Black has difficulty hearing without hearing aids. (Docket 83 ¶ 1). Although having undergone heart surgery shortly after birth, Mr. Black denied any serious illnesses or injuries. Id. ¶ 15. As a child, Mr. Black was diagnosed with a hearing impairment and uses hearing aids throughout his life. Id. ¶ 3.

In March 2012, Mr. Black was approved to receive Supplemental Security Income ("SSI") for hearing loss not treated with cochlear implant and attention-deficit hyperactivity disorder ("ADHD"). Id. ¶ 16. Mr. Black graduated from Southeast Valley High School in Gowrie, Iowa. Id. ¶ 6.

When he reached 18 years of age, the Social Security Administration initiated an age-based disability review. Id. ¶ 17. A Continuing Disability Review Report, Form SSA-454-BK, was sent to Mr. Black. He completed the form and returned to it to SSA but failed to attend consultative examinations scheduled by the SSA. Id. ¶ 18. On June 12, 2017, due to insufficient

evidence, the South Dakota Disability Determination Service found Mr. Black no longer qualified for SSI benefits as an adult.  Id. ¶ 19.

In the Fall of 2017, he attended Western Dakota Tech ("WDT") in Rapid City, South Dakota, and enrolled in the technical studies program.[2]  Id. ¶¶ 7 & 8.  Mr. Black communicated verbally without difficulty with Debbie Toms, the WDT Student Success Director and Registrar.  Id. ¶ 9.  Lori Liebman, Disabilities Services Coordinator and Student Success Coach, reported Mr. Black stated he "hears just fine" and declined Americans with Disability Act 504 services.  Id. ¶ 10.  She had no difficulty communicating verbally with Mr. Black.  Id.  Ms. Liebman advised Mr. Black's WDT instructors he had declined any accommodations and that no instructional adjustments were needed.  Id.

Tyler Bowling is the Assistant District Manager at the SSA Rapid City, South Dakota, field office.  Id. ¶ 11.  Mr. Bowling communicated verbally by telephone with Mr. Black without the known use of special services and never had difficulty communicating verbally with him.  Id.

On September 13, 2017, Mr. Black submitted a Request for Reconsideration, Form SSA-789, to the SSA.  Id. ¶¶ 20 & 42.  He asked to appear at a disability hearing, indicating he needed a sign language interpreter. Id.  To the agency's knowledge, Mr. Black was not known to communicate by sign language and had never requested a sign language interpreter.  Id.

---

[2]Mr. Black objects to the defendant obtaining plaintiff's WDT records. (Docket 93 at 1).  Defendant's response indicates plaintiff's WDT "student records were produced pursuant to a subpoena [and] Mr. Black was properly served a notice and copy of the subpoena pursuant to federal Rule of Civil Procedure 45(a)(4)."  (Docket 98 ¶ 45).  Plaintiff's objection is overruled.

As of January 2018, he was using Oticon BTE hearing aids in both ears. Id. ¶ 2. As Mr. Black's speech was adequate after his hearing was corrected with hearing aids, he did not require speech therapy. Id. Mr. Black communicates verbally. Id. ¶ 5.

On January 5, 2018, Norman N. Sorenson with Mountain Plains Audiology, Inc., performed an audiological evaluation of Mr. Black in connection with his disability claim. Id. ¶ 21. The evaluation reported Mr. Black had severe to profound hearing loss in both ears and his level of impairment would make it difficult to hear without hearing aids. Id. ¶ 22. Mr. Sorensen noted Mr. Black used Oticon BTE hearing aids in both ears and was able to understand and answer questions appropriately as long as the person speaking was looking directly at Mr. Black. Id.

On March 7, 2018, in connection with Mr. Black's SSA disability claim Greg Swenson, Ph.D., performed a functional assessment, mental status exam and psychological testing. Id. ¶ 23. Mr. Black reported he was diagnosed with a hearing impairment during childhood, used hearing aids throughout his life and did not require speech therapy as his speech was adequate upon correction of his hearing. Id. ¶ 24. Dr. Swenson reported Mr. Black could hear, had no difficulty communicating, understood the questions posed by Dr. Swenson and that Mr. Black's hearing was adequate for evaluation purposes. Id. ¶ 25.

In a telephone call to the agency, Mr. Black requested SSA make a decision on his file without a hearing. Id. ¶ 26. On April 11, 2018, based on

the evidence of record, a Disability Hearing Officer found Mr. Black was not disabled under the adult standards of the Social Security Act.  Id.

On April 16, 2018, Mr. Black requested a hearing by an Administrative Law Judge ("ALJ").  Id. ¶ 27.  Mr. Black wished to appear in person at the hearing and checked a box requesting an interpreter.  Id.  In an accompanying handwritten letter of the same date, Mr. Black stated he wanted a sign language interpreter "every time I come into the Rapid City office."  Id. ¶ 28.

On June 26, 2018, Mr. Bowling contacted Mr. Black by telephone to schedule an appointment at the Rapid City SSA field office.  Id. ¶ 29.  Mr. Bowling communicated verbally with Mr. Black without issue or known use of special services.  Id.  Mr. Black agreed to meet on July 12, 2018, at 1 p.m. at the Rapid City SSA office.  Id.  Mr. Bowling specifically asked whether Mr. Black needed an interpreter.  Id.  Mr. Bowling repeated the question three times because he thought Mr. Black seemed to avoid the question.  Id.  Finally, Mr. Black stated: "Yes, I need an American Sign Language interpreter."  Id.

On June 27, 2018, a letter was sent to Mr. Black confirming the July 12, 2018, meeting at the Rapid City SSA office.  Id. ¶ 30.  On July 10, 2018, a letter was sent to Mr. Black rescheduling the meeting to August 14, 2018, at 1 p.m. to review Mr. Black's disability claim.  Id. ¶ 31.

SSA policy provides for a certified and qualified sign language interpreter for an interview if the client schedules an appointment and requests an interpreter in advance.  Id. ¶ 40.  A purchase request for a sign language

interpreter is completed and submitted for approval by the SSA Budget Officer. Id.

On August 14, 2018, a certified and qualified American Sign Language interpreter was retained and present at the Rapid City SSA office. Id. ¶ 32. Mr. Black was observed outside the SSA office but he failed to attend the meeting scheduled for that day. Id. ¶ 33. By a letter dated August 23, 2018, Mr. Black was notified by SSA letter that his SSI benefits would cease on September 1, 2018. Id. ¶ 34.

A hearing was scheduled by the ALJ for November 8, 2018. Id. ¶¶ 35 & 44. The notice of hearing stated: "Your request for hearing may be dismissed if you do not attend the hearing and cannot give a good reason for not attending. The time or place of the hearing will be changed if you have a good reason for your request." Id. On September 2, 2018, Mr. Black acknowledged receipt of the notice of hearing. Id. ¶¶ 35 & 44. Mr. Black failed to appear at the scheduled time and place for the hearing before the ALJ. Id. ¶ 36. Finding no good cause for Mr. Black's failure to appear, the ALJ dismissed the request for hearing. Id.

On November 15, 2018, the SSA Office of Hearings Operations mailed a copy of an order of dismissal and a notice of dismissal to Mr. Black. Id. On April 2, 2019, the SSA Office of Appellate Operations mailed to Mr. Black a notice of the appeals council's action denying review of the ALJ's decision. Id.

¶ 37.  All SSA notices were mailed to Mr. Black's address of record as there is no SSA policy requiring notices and letters be mailed via USPS certified mail. Id. ¶¶ 38 & 43.

An Options Card for Deaf and Hard of Hearing Customers ("Options Card"), measuring 11 inches by 17 inches, is displayed at all times at the interview windows in the common area of the SSA's Rapid City field office.  Id. ¶ 39.  The Options Card facilitates communication with deaf and hard-of-hearing clients, by asking the client to choose how "you want to communicate with Social Security today" and provides options including a certified and qualified sign language interpreter, handwritten notes, lip reading or speech reading, the UbiDuo face-to-face communicator, or another way.  Id.  The UbiDuo is a communication device which enables the deaf, hard of hearing, and hearing to communicate instantly with each other face-to-face.  Id.  The UbiDuo has a real time, simultaneous split screen communication display and generates speech from typed text.  Id.

Lyle Tolsma is a Task Force Officer with the South Dakota Cooperative Disability Investigations Unit.  Id. ¶ 13.  Mr. Tolsma communicated verbally by telephone with Mr. Black without difficulty or known use of special services. Id.

Defendant Hector Urcelay is a SSI Claims Specialist at the Rapid City SSA field office.  Id. ¶ 12.  Between October 2017 and November 2019, Mr. Urcelay worked with Mr. Black.  Id.  Mr. Urcelay never observed Mr. Black use sign language to communicate.  Id.   Mr. Urcelay communicated verbally by

14

telephone with Mr. Black without any difficulty or known use of special services.  Id.  Mr. Urcelay had no difficulty communicating verbally with Mr. Black.  Id.  Mr. Black was never denied the services of a sign language interpreter.  (Docket 82 ¶ 41).

Mr. Black moved the court to take judicial notice that sign language is his "primary source of communication."  (Docket 92 at p. 1).  In support of the motion, he makes a number of statements relating to his hearing impairment. Id. at pp. 1-7.  A number of those statements are merely argument and the remaining statements are not made under oath and do not otherwise qualify under Fed. R. Civ. P. 56(c)(4) (A declaration is required to state that it is "made on personal knowledge, set out facts that would be admissible in evidence, and show that the . . . declarant is competent to testify to the matters stated.").  See also 28 U.S.C. § 1746.

Plaintiff's own conclusions, without supporting evidence, are insufficient to create a genuine issue of material fact.  Anderson, 477 U.S. at 256; Thomas, 483 F. 3d at 527; Torgerson, 643 F. 3d at 1042.  The court denies plaintiff's motion for judicial notice.

Plaintiff's response to defendant's motion for summary judgment did not include a statement in opposition to defendant's statement of material facts supported by evidence contained in the record.  (Docket 93).  See D.S.D. Civ. LR 56.1(B) ("A party opposing a motion for summary judgment must respond to each numbered paragraph in the moving party's statement of material facts with a separately numbered response and appropriate citations to the record.").

15

Mr. Black objects that the declaration made by Mr. Urcelay was not "notarized or . . . in the form of an affidavit." (Docket 93 at p. 1) (referencing Docket 87). He makes a similar objection to the declarations of Mr. Bowling and Mr. Sidel. Id. (referencing Dockets 88 & 90).

Each of the declarations objected to by plaintiff contain the statement that the witness "declare[d] under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief." (Dockets 87 at p. 5; 88 at p. 2; and 90 at p. 1). This statement satisfies Rule 56(c)(4). Mr. Black's objections to the court's consideration of the declarations are overruled.

In response to defendant's interrogatories, Mr. Black stated he uses hearing aids, lip reads and that his primary mode of communication is "visual, pictures, pointing, written communication, sign language, gestures, texting, facial expressions, & body language." (Docket 98 ¶ 46). Regarding the sign language system he uses, Mr. Black stated he could sign the alphabet but refused to provide further details claiming an "invasion of privacy & form." Id. Mr. Black stated he learned sign language from "family, teachers, friends, & internet," but refused to state his proficiency objecting on the basis of "invasion of privacy." Id. When asked to identify people who knew him to communicate using sign language, Mr. Black responded only "lay witness[es]." Id.

In an earlier order, the court reminded Mr. Black that he was required "to comply with Rule 56 and the local rules." (Docket 40 at p. 3). Plaintiff's "filings are replete with conclusory allegations" without "any concise and specific statements of material facts admissible" under the Federal Rules of

Evidence.  Northwest Bank & Trust Co. v. First Illinois National Bank, 354 F.3d 721, 725 (8th Cir. 2003).  Plaintiff's failure to submit a responding statement of disputed material facts and the vague answers he provided to defendant's interrogatories require the court to conclude defendant's statement of material facts are deemed admitted.  D.S.D. Civ. 56.1(D).

The Rehabilitation Act states:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of . . . his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.]

29 U.S.C. § 794(a).  To establish a prima facie claim under the Rehabilitation Act, a plaintiff must show that "(1) he is a qualified individual with a disability; (2) he was denied the benefits of a program or activity of a public entity which receives federal funds, and (3) he was discriminated against based on his disability." Gorman v. Bartch, 152 F.3d 907, 911 (8th Cir. 1998) (referencing 29 U.S.C. § 794(a); other citation omitted).  The Rehabilitation Act does not allow for individual liability.  Landman v. Kaemingk, No. 4:18-CV-04175, 2020 WL 3608288, at *2 (D.S.D. July 2, 2020); Lundahl v. Gross, 5:18-CV-05090, 2020 WL 927650, at *8 (D.S.D. Feb. 26, 2020).  "To meet the meaningful access standard, public entities . . . 'are not required to produce the identical result or level of achievement for handicapped and nonhandicapped persons, but must afford handicapped persons equal opportunity to . . . gain the same benefit.' " Segal v. Metro. Council, 29 F. 4th 399, 404 (8th Cir. 2022).

17

As a hearing-impaired individual, Mr. Black claims Mr. Urcelay changed the dates of plaintiff's appointments and refused to secure a sign language interpreter for plaintiff in his contacts with SSA.  (Docket 1 at pp. 4, 7 & 9).  Mr. Black asserts Mr. Urcelay inhibited plaintiff's ability to get his social security benefits restored because Mr. Urcelay "[r]efused to properly communicate with my disability" and that this alleged discrimination was "because of my disability."  Id. at pp. 4-5.

Plaintiff's claims are not supported by the record.  Mr. Black failed to present any evidence he requested but was denied a sign language interpreter at any scheduled SSA meeting or hearing.  During briefing of the present motions, Mr. Black asserted SSA refused him the option of using his own interpreter.  (Docket 93 at pp. 1-2).  Yet, Mr. Black failed to present any evidence as to the name or qualifications of his proposed personal American Sign Language interpreter or when this individual was to assist Mr. Black during a SSA meeting or hearing.

Mr. Black fails to cite any federal law or regulation which requires SSA to communicate with its clients by certified mail or certified mail return receipt requested.  The undisputed evidence shows the SSA sent Mr. Black notice by United States mail of every appointment and hearing related to his claim.  Mr. Black was provided adequate notice of each appointment, change of appointment and administrative hearing associated with his disability claim.

Mr. Black "failed to show that [Mr. Urcelay] denied him meaningful access to [SSA] services."  Gustafson v. Bi-State Development Agency of

<u>Missouri-Illinois Metropolitan District</u>, 29 F. 4th 406, 412 (8th Cir. 2022).
Because Mr. Black "has not shown he was denied an opportunity to access the
same services as non-disabled [claimants]," the court must grant defendant's
motion for summary judgment.  <u>Id.</u>

**ORDER**

Based on the above analysis, it is

ORDERED that plaintiff's motion for summary judgment (Docket 69) is
denied.

IT IS FURTHER ORDERED that defendant's motion for summary
judgment (Docket 81) is granted.

IT IS FURTHER ORDERED that plaintiff's complaint (Docket 1) is
dismissed with prejudice.

IT IS FURTHER ORDERED that plaintiff's motion for judicial notice
(Docket 92) is denied.

IT IS FURTHER ORDERED that plaintiff's motions (Dockets 71, 72, 73 &
103) are denied as moot.

IT IS FURTHER ORDERED that defendant's motion (Docket 104) is
denied as moot.

Dated July 29, 2022.

BY THE COURT:

/s/ *Jeffrey L. Viken*
JEFFREY L. VIKEN
UNITED STATES DISTRICT JUDGE